USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
SIMPLEXGRINNELL LP, :
:
Plaintiff, :
-v- : 07 Civ. 2700 (GEL)
:
INTEGRATED SYSTEMS & POWER, INC., f/k/a : **OPINION AND ORDER**
SIMPLEX OF NEW YORK CITY, LLC, f/k/a/ :
NEW YORK CITY, LLC, :
:
Defendant. :
:
------------------------------------------------------------x

Richard M. Simes, Paul M. Lavelle, and Michael
Kivort, Abbott Simses, APCL, Houston, Texas,
and James K. Leader, Leader & Berkon LLP,
New York, New York, for Plaintiff.

Kevin J. Nash, Goldberg Weprin Finekl Goldstein
LLP, New York, New York and Theodore C. Max,
Sheppard, Mullin, Richter & Hampton, New York,
New York, for Defendant.

GERARD E. LYNCH, District Judge:

This action primarily revolves around plaintiff SimplexGrinnell LP's allegations of

copyright infringement by defendant Integrated Systems & Power, Inc. ("ISPI") through the

unauthorized use of SimplexGrinnell's 4100 and 4100U fire alarm system panel programming

software (the "Programmers"). Following a bench trial, this Court issued an Opinion and Order

setting forth its Findings of Facts and Conclusions of Law (the "Opinion"), which, inter alia,

granted, in part, SimplexGrinnell's request for a permanent injunction against ISPI's infringement

of the Programmers. SimplexGrinnell v. Integrated Systems & Power, Inc, __ F. Supp. 2d __,

2009 WL 857504, at Conclusions ¶¶ 35-39 (S.D.N.Y. Mar. 31, 2009).[1] Interpreting the Bankruptcy Stipulation that granted ISPI a limited license to use the Programmers, the Court concluded that "ISPI infringes upon SimplexGrinnell's copyright when it uses the Programmers for new customers, but not when servicing customers on the ISPI Customer List." Id. Conclusions ¶ 29.[2] The injunction contemplated, however, did not extend quite so far as this conclusion would on first glance indicate.

As explained in the Opinion, there are multiple revisions and versions of the Programmers. Specifically, the Programmers are divided into revisions 8, 9, 10, 11, and 12, and each revision is in turn further subdivided each into a number of versions. Id. Findings ¶¶ 19-20. So, for example, versions 10.01, 10.50, 10.60, 10.61, 10.60.99 and 10.61.01 are all part of revision 10. Id. Findings ¶ 20. In assessing SimplexGrinnell's claim of copyright infringement, the Court noted that "[a]lthough the parties presented this issue in terms of SimplexGrinnell's copyright in the various *revisions* of the Programmer, each new version constitutes a separate

---

[1] On April 8, 2009, a week after issuing the original Opinion, the Court issued an Amended Opinion to add the name of one of SimplexGrinnell's attorney's who was inadvertently omitted from the original March 31 Opinion, and to correct an erroneous statement concerning SimplexGrinnell's pre-suit notice to the Register of Copyrights. The version of the Opinion posted on Westlaw, though dated March 31, 2009, is actually the later issued Amended Opinion. Because the Amended Opinion was coincidentally issued the same day plaintiff moved for reconsideration, plaintiff technically seeks reconsideration of the March 31 Opinion. Neither of the two minor discrepancies between the original and amended versions are germane to the present motion. Accordingly, for ease of reference, the Court will cite to the Amended Opinion published on Westlaw. Citations to "Findings ¶ __" and "Conclusions ¶ __" refer respectively to paragraph numbers within first, the Opinion's Findings of Fact, and second, its separately numbered Conclusions of Law.

[2] The "Bankruptcy Stipulation" refers to a stipulated settlement between the parties in an earlier adversary proceeding attendant to ISPI's Chapter 11 Bankruptcy. Id. Findings ¶¶ 5-7. The "ISPI Customer List" is an addendum to the Bankruptcy Stipulation which lists the names and addresses of over 200 sites at which ISPI operated as of February 1, 2004. Id. Findings ¶ 10.

derivative work, and thus the issue must be approached" at the version level. Id. Conclusions ¶ 5 (internal citation omitted). In light of Second Circuit precedent establishing "that a court does not have jurisdiction to entertain a claim of infringement in an unregistered derivative work, even if that claim is coupled with a claim of infringement in the validly registered original work," id. Conclusions ¶ 4, citing In re Literary Works in Elec. Databases Copyright Litig., 509 F.3d 116, 122-23 (2d Cir. 2007), the Court concluded that it was "without jurisdiction to entertain claims based on alleged infringement of any" non-registered versions of the software. Id. Conclusions ¶ 6. Accordingly, although SimplexGrinnell sought to enjoin ISPI's unauthorized use of *revisions* 8, 9, 10, 11, and 12, the injunction was limited to the only four individual *versions* of the Programmer properly registered: versions 8.04, 9.02, 10.01 and 11.01. Id. Findings ¶¶ 34-30; id. Conclusions ¶¶ 6, 38. At the same time, the Court also enjoined ISPI's related misappropriation of SimplexGrinnell's trade secrets through the use of its software keys (or "dongles"). Id. Conclusions ¶ 50. As a dongle is necessary to access the Programmers, id. Findings ¶ 64, an injunction against unauthorized use of the dongles has the same practical effect as an injunction against unauthorized use of the Programmers directly. Id. Conclusions ¶¶ 48-50.

SimplexGrinnell now moves for reconsideration of the Court's refusal to directly enjoin ISPI's use of the non-registered versions of the Programmers. SimplexGrinnell's argument is two-fold and made in the alternative. First, it claims that each version of the software is not a derivative work and, as a result, it contends that the registration of one version within each revision is sufficient to confer subject matter jurisdiction over the entire revision. Alternatively, it argues that even if each version is a separate derivative work, the unregistered versions contain much of the same computer code as contained in the registered versions, and thus, infringement in the unregistered versions becomes indirectly actionable.

3

Neither argument was previously articulated. Indeed, prior to making this motion, SimplexGrinnell did not address the jurisdictional limitations imposed by the Copyright Act's registration requirement, and, in accordance with its general revision-level approach, contended simply that its registration of the four versions established valid *ownership* (which is distinct from registration) of the copyright in the various Programmers under consideration. (E.g., P. Post-Trial Mem. 9.) Nevertheless, the arguments belatedly presented will be explored to more fully flesh out the underlying copyright analysis, as – reflective of the parties' treatment – the Opinion glossed over the issued now raised. As will be seen below, although the legal arguments SimplexGrinnell advances have some merit, SimplexGrinnell's motion for reconsideration must be denied in substantial part because the factual evidence is insufficient to achieve its desired result. These same factual insufficiencies, however, warrant amending the Court's conclusion that each version of the Programmer *is* a separate derivative work – not, as SimplexGrinnell urges, to reflect that they *are not* separate derivative works, but rather to state merely that they *may* each be separate derivative works. Accordingly, for the reasons that follow, SimplexGrinnell's motion for reconsideration will be granted to the extent set forth below.

## DISCUSSION

### I.   Standard For Reconsideration

Local Civil Rule 6.3 provides that a party may submit a motion for reconsideration "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Loc. Civ. R. 6.3.[3] Courts have repeatedly made clear that the availability of "[a]

---

[3] SimplexGrinnell styles its motion as one to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) and for reconsideration under Local Rule 6.3. Technically speaking, however, there is no judgment to alter or amend; the Court did not contemporaneously issue judgment with the Opinion, and in light of SimplexGrinnell's pending motion, determined

motion for reconsideration is not an invitation to parties to 'treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's ruling.'" Patterson v. U.S., No. 04 Civ. 3170, 2006 WL 2067036, at *2 (S.D.N.Y. Jul. 26, 2006), quoting De Los Santos v. Fingerson, No. 97 Civ. 3972, 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998); see also Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Thus, a motion for reconsideration is not an opportunity to present "new facts, issues or arguments not previously presented to the court." Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2004 WL 2782876, at *1 (S.D.N.Y. Dec. 3, 2004). Rather, reconsideration is generally appropriate only where the movant "demonstrate[s] that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion, which had they been considered might reasonably have altered the result reached by the court.'" In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., Nos. 06 Civ. 643, 07 Civ. 8686, 07 Civ. 8688, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 23, 2008), quoting Keiser v. CDC Inv. Mgmt. Corp., No. 99 Civ. 12101, 2004 WL 516212, at *1 (S.D.N.Y. Mar. 17, 2004). Reconsideration is also appropriate "to correct a clear error of law or prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

## II.     Each Version Of The Programmer May Be A Derivative Work

SimplexGrinnell first contends that the Court's conclusion that each *version* of the Programmer constitutes a separate derivative work is erroneous because the variations between

---

to delay final judgment until resolution of the motion sub judice. This technicality is immaterial, however, because identical standards apply to motions for reconsideration under Local Rule 6.3 and motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). E.g., Swarna v. Al-Awadi, No. 06 Civ. 4880, 2009 WL 1562811, at *1 (S.D.N.Y. May 29, 2009); Farez-Espinoza v. Napolitano, No. 08 Civ. 11060, 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009).

versions are too trivial to support separate copyrightability. According to SimplexGrinnell, it is only when it deigns to designate a new *revision* – i.e., a new number to the left of the decimal point – that the requisite originality exists. Thus, it contends that the Court does in fact have subject matter jurisdiction to enjoin infringement of each version within a revision subsequent to the registered version.

The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works." 17 U.S.C. § 101. "[F]or a work to qualify as a derivative work it must be independently copyrightable." Woods v. Bourne Co., 60 F.3d 978, 990 (2d Cir. 1995). This means that in order to qualify for protection as a derivative work, and be separately copyrightable, the new contributions must, "when analyzed as a whole, . . . display sufficient originality so as to amount to an 'original work of authorship.'" Matthew Bender & Co, Inc. v. West Publ'g Co., 158 F.3d 674, 680 (2d Cir. 1998), quoting 17 U.S.C. § 101's definition of a "derivative work." While this requires "a distinguishable variation that is more than merely trivial. . . . [t]he test of originality is concededly a low threshold." Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 782 (2d Cir. 1994) (internal citations omitted). For, "'originality' in the copyright context 'means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'" Merkos L'Inyonei Chinuch, Inc. v. Ostar Sifrei Lubavitch, Inc., 312 F.3d 94, 97 (2d Cir. 2002) (per curiam) (internal brackets omitted), quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991).

Thus, while SimplexGrinnell is correct that a derivative work requires originality, the evidence presented at trial does not bear out its contention that its separate versions are *not* derivative works. It bears reiterating that by-and-large, SimplexGrinnell did not present evidence

6

concerning the differences between the versions of the Programmer. Rather, it predominately focused its efforts on establishing that the 4100U Programmer (encompassing revisions 10, 11 and 12) was not a "fix" of the 4100 Programmer (encompassing revisions 8 and 9). With this almost single-minded focus, SimplexGrinnell sought primarily to establish that revision 9 bears little resemblance to revision 10.

The evidence, however, was not entirely devoid of discussion of the variations within versions. Most significantly, SimplexGrinnell now points to Trial Exhibit P (introduced by ISPI not SimplexGrinnell), the "Software Release Document" for the 4100U Programmer (the "SRD"), which details the functional changes and enhancements, repaired defects, and outstanding known (but unrepaired) defects with respect to each version within the 4100U Programmer, from versions 10.01 through 12.05.06.[4]

An examination of the SRD belies SimplexGrinnell's contention that it demonstrates the triviality of each new version. To the contrary, the SRD documents numerous changes between certain versions of the Programmer. For example, between versions 10.01.01 and 10.50 (despite the gap in numbering, these appear to be successive versions), the SRD catalogs the addition of an audio programming feature and the repair of over 275 defects. (Ex. P at ISPI 0472-0479.) In the next version, 10.60, SimplexGrinnell added Canadian audio programming capabilities and repaired 50 defects. (Id. at ISPI 0480-0481.) Taking an example from within revision 11, between versions 11.08.01 and 11.08.02, 10 functional changes were made, along with the repair of 23 defects. (Id. at ISPI 0505-0506.) Simply put, the SRD does not support SimplexGrinnell's unilateral labeling of the variations between versions as "trivial."

---

[4] No similar evidence has been provided with respect to the 4100 Programmer (i.e. the versions within revisions 8 and 9).

To be sure, the SRD also documents versions with fewer alterations. Such an example is, unsurprisingly, highlighted by SimplexGrinnell. It points to version 10.61.01, which added no new functional changes or enhancements over version 10.61, and repaired only a handful of defects (either two or five; the documentation is unclear to a software layman, and SimplexGrinnell points to no clarifying evidence). (Id. at ISPI 0483.) Even SimplexGrinnell's handpicked example, however, is insufficient to support the conclusion that the new material added to version 10.61.01 is insufficiently original to support independent copyrightability. Fundamentally, the SRD – which addresses the functionality of the Programmer through successive versions – does not speak to the relevant considerations necessary to properly analyze whether the software is copyrightable. Among other aspects of a computer program entitled to copyright protection, "[i]t is settled that 'the literal elements of computer programs, i.e., their source and object codes, are the subject of copyright protection,'" if sufficiently original. Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997), quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 702 (2d Cir. 1992). Thus, even if adding a new feature, or repairing a defect, is functionally "trivial," it does not follow that the change did not involve originality in the new computer code that effects the functional change. Whether the changes involved adding a period, moving a comma, reorganizing the sequence of events, or the addition of a thousand lines of code, is left unexplained by the record.

SimplexGrinnell also points to the testimony of Antony Capowski, made in connection with the preliminary injunction hearing (though not reintroduced at trial), as to the significance of SimplexGrinnell's labeling conventions. Capowski testified that "new features" and or repaired defects only warrant a new *version* within the existing revision, whereas the designation of a new *revision* is reserved for a "major release of new features." (P. Mem. Ex. 2, Capowski P.I. Hr'g

8

Tr. 75-76.) From this, SimplexGrinnell blithely asserts that "[c]learly, Mr. Capowski's use of the phrase 'major release of new features' equates to the case law's requirement of 'substantial variation.'" (P. Mem. 3.) Not so. The reasons the SRD does not demonstrate the unoriginality of each version apply equally to Capowski's testimony.[5]

Accordingly, the evidence does not support SimplexGrinnell's contention that the variation from one version to another is too trivial to support independent copyrightability. On reconsideration, however, it becomes clear that neither does the evidence necessarily support a finding that each version is definitively a separate derivative work. As a result, the Opinion is modified to provide that each new version is *potentially* a derivative work, rather than definitively declaring that they are. This modification does not implicate the conclusions SimplexGrinnell most cares about: that the Court's subject matter jurisdiction is limited to the four registered versions. SimplexGrinnell bears the burden to establish subject matter jurisdiction, see Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), and it has failed to demonstrate that the Court's jurisdiction should extend beyond the four properly registered versions.[6]

---

[5] In addition, SimplexGrinnell attempts to introduce – for the first time – an excerpt of the deposition of ISPI's expert witness, Dr. Benjamin Goldberg, suggesting that revisions 11 and 12 are highly similar, with "some small enhancements," but "largely the same . . . . code." (P. Mem. Ex. 3, Goldberg Dep. 103.) A motion for reconsideration is decidedly not the time to introduce new evidence, such as this, that was amply available to SimplexGrinnell at trial. Accordingly, the Court declines to consider this evidence. See, e.g., Fonar, 105 F.3d at 102 (noting that on reconsideration motion, "[t]he district court properly refused to consider the affidavit, which had not been before the court when the summary judgment order was issued," and likewise declining to consider the affidavit on appeal).

[6] Additionally, SimplexGrinnell provides no support for its contention that if sufficient originality were lacking for a new version to qualify as a derivative work, the Court's subject matter jurisdiction would extend to that new – *uncopyrightable* – work. Even if a new version would not qualify as a "derivative work," it is nevertheless still a separate work, as understood in

### III. Registration Of A Single Version Within A Revision Does Not Permit Enjoining Use Of The Entire Revision

SimplexGrinnell next argues that irrespective of whether each version is a separate derivative work, the Court erred in concluding that it could not enjoin ISPI's use of the non-registered versions of the software because "later software versions in a given [r]evision are made up substantially of the software code contained in the underlying, registered version," and as a result, "any authorized use of the later, unregistered versions infringes the copyright in the underlying, registered version." (P. Mem. 4.)

SimplexGrinnell cites no binding authority for this proposition. As SimplexGrinnell recognizes, Second Circuit cases such as Well-Made Toy Mgf. Corp. v. Goffa Int'l Corp., 354 F.3d 112 (2d Cir. 2003) ("Well-Made Toy II"), make clear that the Court is without jurisdiction over claims of infringement in unregistered works. Instead, SimplexGrinnell primarily relies upon an aspect of the district court's opinion in Well-Made Toy – which the Second Circuit did not address – which stated that "where the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work, but not as to any element original to the unregistered derivative work." 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002) (Weinstein, J.).[7] SimplexGrinnell claims that

---

the Copyright Act, which states that "where [a] work has been prepared in different versions, each constitutes a separate work." 17 U.S.C. § 101 (definition of when a work is "created."). And the jurisdictional registration requirement precludes "an action for infringement of the copyright in any United States work" until proper registration or preregistration has been accomplished. 17 U.S.C. § 411(a). It is unnecessary to explore this issue further, however, in light of the rejection of SimplexGrinnell's argument that each version is not a separate derivative work.

[7] SimplexGrinnell also cites a number of cases from other jurisdictions in accord with this statement. E.g., Montgomery v. Noga, 168 F.3d 1282, 1292-93 (11th Cir. 1999); Knowledgeaz, Inc. v. Jim Walters Resources, 05-cv-1019, 2008 WL 4498915, at *11 (S.D. Ind.

because the Second Circuit "did not overrule this portion of the District Court's opinion . . . it is the law in this District." (P. Reply 3.) SimplexGrinnell is wrong. Binding precedent is not established by silence.

Nevertheless, although the Second Circuit has yet to definitively address the issue, this Court is persuaded that Judge Weinstein's statement of the law is correct. The Copyright Act provides that "[t]he copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103. In accordance with this principle, the United States Copyright Office advises that while "[e]ach separately published version of a computer program that contains new, copyrightable authorship *must be registered separately*," all registrations subsequent to the initial registration "cover[] only the new or revised material added to that version." U.S. Copyright Office, *Circular 61: Copyright Registration for Computer Programs*, at 3 (May 2009), available at http://www.copyright.gov/circs/circ61.pdf.

From this it logically follows that unauthorized copying of a derivative work infringes the derivative work itself only to the extent of the newly added material; any infringement of the pre-existing material infringes the pre-existing work, rather than the derivative work from which the pre-existing material may have actually been copied. The leading copyright treatise is in accord with this result, explaining that since "a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright proprietor's consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain" a suit for copying an unregistered derivative work. 2

---

Sept. 20, 2008).

11

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2][b] (2008) (internal footnote omitted).

Thus, as SimplexGrinnell urges, it is correct that to the extent unregistered versions "incorporate protectable elements of [a registered version] and were copied in an unauthorized manner, the infringement of the underlying work, through the unauthorized copying of the derivative works, serves as the basis for federal court jurisdiction and action based on the registration of the underlying work." (P. Mem. 5.) Where SimplexGrinnell's argument falters, yet again, is in the absence of a sufficient factual underpinning.

SimplexGrinnell boldly asserts that the unregistered versions "contain significant copyrighted elements of the" registered versions. (P. Mem. 5.) SimplexGrinnell again points to the SRD, contending that the document "amply describes how the software remains largely intact through the course of a given [r]evision." (P. Reply 4.) SimplexGrinnell overstates the degree to which the SRD conveys this message. In any event, even if the SRD satisfactorily established this point, SimplexGrinnell has never – not even now – sought to identify which aspects of the Programmers (either generally, or of the registered versions specifically), it believes to be copyrightable, as is necessary to make its point complete.

As the Supreme Court noted in Feist, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." Feist, 499 U.S. at 348; accord, Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001) ("[A]n element within a work may be unprotectable even if other elements, or the work as a whole, warrant protection."). This principle unequivocally applies in the realm of computer programs and it is clear that the "copyrightability of computer programs . . . is not . . . an all-or-nothing proposition." Wireless TV Studios, Inc. v. Digital Dispatch Sys., Inc., No. 07 Civ. 5103, 2008 WL 2474626, at *1

(E.D.N.Y. June 19, 2008). It is unnecessary to delve into the precise contours of the scope of protection in computer programs; it is sufficient to note that the extent of protection may be circumscribed by a number of principles, including copyright's all-important originality requirement, e.g., Boisson, 273 F.3d at 268, "the express limits on copyright in Section 102(b) of the Copyright Act,[8] and in the Second Circuit's filtering test, [Altai, 982 F.2d at 706-12]," Wireless TV Studios, 2008 WL 2474626, at *1, as well as the three related doctrines of merger, *scenes a faire*, and the exclusion of functional elements from copyright protection, Bus. Mgmt. Int'l, Inc. v. Labyrinth Bus. Solutions, LLC, No. 05 Civ. 6738, 2009 WL 790048, at *12 (S.D.N.Y. Mar. 24, 2009). See generally eScholar, LLC v. Otis Educ. Sys., Inc., No. 04 Civ. 4051, 2005 WL 2977569 (S.D.N.Y. Nov. 3, 2005) (describing the scope of copyright protection in computer programs).

While the fact of registration of the four versions is prima facie evidence that there is something new, original, and protectable within each of those versions, without any indication of the extent to which those programs are protected, the mere fact that substantial portions of those programs may be incorporated into unregistered versions provides no evidence that the overlap encompasses protected characteristics. Nor can it be ascertained on the existing record whether, to the extent there is any overlap in protected components, it would be more than de minimis, as would be required for the copying of an unregistered version to infringe upon the registered version. Cf. Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) (copyright infringement plaintiff must establish that unauthorized copying was

---

[8] The foundation for copyright's idea/expression dichotomy, section 102(b) excludes from the scope of copyright protection "any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied." 17 U.S.C. § 102(b).

more than de minimis) (internal quotations omitted). As a result, it would be patently inappropriate to enjoin use of non-registered versions – even if only to protect components of the registered versions – on such an incomplete showing.

Nor is it appropriate to allow SimplexGrinnell to submit additional evidence to make the necessary showing. Although the Court has discretion to amend its Opinion to prevent "manifest injustice," the circumstances presented here do not remotely approach that standard. As SimplexGrinnell itself recognizes, the relief it presently seeks would not alter the substantive obligations between the parties. (E.g., P. Reply 4.) Accordingly, the Court sees no need to compensate for SimplexGrinnell's failures of proof at trial.

SimplexGrinnell contends that, to the extent it failed to prove its case, such failure was occasioned not by its own inadvertence, but rather by the Court's instruction that the relevant consideration was not – as the parties spent much time arguing – whether the 4100U Programmer constituted a "patch" or "fix" of the 4100 Programmer, but whether the Programmers were service parts. This is no answer. The relative importance of patches, fixes, and service parts flows directly from the text of the relevant contract, which provides a limited license for ISPI to use SimplexGrinnell's copyrighted "service parts . . . , including 'patches' and 'fixes.'" See SimplexGrinnell, at Conclusions ¶¶ 12-13. The Court's highlighting the relevant contractual consideration in no way obviated SimplexGrinnell's responsibility to thoroughly present its case – particularly when the matter concerns so fundamental an issue as the Court's subject matter jurisdiction. Accordingly, the Court rejects SimplexGrinnell's repeated offer to provide a supplemental affidavit from Capowski to supply the missing evidence.

In the end, there is no reason to modify the Court's conclusion that the permanent injunction against ISPI's unauthorized use of the Programmers should be limited to the four

properly registered versions.

## CONCLUSION

For the foregoing reasons, SimplexGrinnell's motion for reconsideration (Doc. #72) is granted to the extent of modifying the Court's determination that each version of the Programmer is in fact a separate derivative work and to provide instead that each version is potentially a separate derivative work. SimplexGrinnell's motion is denied in all other respects. Final judgment will be issued forthwith.

SO ORDERED.

Dated: New York, New York
       July 24, 2009

/s/ Gerard E. Lynch

GERARD E. LYNCH
United States District Judge